**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Randall Scott ADKINS, Defendant-
Appellant.**

**No. 72–2336.**

United States Court of Appeals,
Ninth Circuit.

Jan. 5, 1973.

Duniway, Circuit Judge, dissented
and filed opinion.

Don H. Marmaduke (argued), of Marmaduke, Aschenbrenner, Merten & Saltveit, Portland, Or., for defendant-appellant.

D. Richard Hammersley, Asst. U. S. Atty. (argued), Joseph E. Buley, Asst. U. S. Atty., S. I. Lezak, U. S. Atty., for plaintiff-appellee.

Before HAMLIN and DUNIWAY, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

Randall Scott Adkins appeals his conviction by the court sitting without a jury of failing to submit to induction in violation of 50 U.S.C.App. § 462. The sole issue is whether his local board violated Selective Service Regulations dealing with the Extended Priority Selection Group (32 C.F.R. § 1631.6(d)(5)) in ordering his induction after April 1, 1971.[1]

Adkins was classified II–S from December, 1967 to December, 1970, when he was reclassified I–A. On January 1, 1971 he was transferred to the Extended Priority Selection Group. On February

---

* Honorable W. J. Jameson, United States Senior District Judge for the District of Montana, sitting by designation.

1. 32 C.F.R. § 1631.6(d)(5):

"(5) Members of the Extended Priority Selection Group who have not been issued orders to report for induction and originally scheduled for a date prior to April 1 shall forthwith be assigned to the lower priority selection group to which they would have been assigned had they never been assigned to the Extended Priority Selection Group; except that members of the Extended Priority Selection Group who would have been ordered to report for induction to fill the last call in the first quarter of the calendar year but who could not be issued orders shall remain in the Extended Priority Selection Group and shall be ordered to report for induction as soon as practicable. Circumstances which would prevent such an order shall include but not be limited to those arising from a personal appearance, appeal, preinduction physical examination, reconsideration, judicial proceeding, or inability of the local board to act."

The same regulation was formerly § 1631.7(d)(5). By amendment the numbering but not the language has been changed.

5, 1971 he reported for his physical examination and was found acceptable.

On February 11, 1971 the board received a letter from Adkins requesting SSS Form 150, Special Form for Conscientious Objector. This form, which contains the statement, "Complete and return within 30 days", was mailed to Adkins on the same day.[2] The form was never returned. On February 16, 1971 Adkins was notified of his acceptability for induction.

On April 19, 1971, without any request from Adkins, the board reopened and reviewed his status and retained him in I–A. After a reopening and reclassification a registrant has 30 days to appeal. (32 C.F.R. §§ 1625.13, 1626.2) On May 24, 1971 Adkins was ordered to report for induction on June 7, 1971. On June 2, 1971, he again requested SSS Form 150, and it was mailed to him the same day. On June 8 he reported for induction but refused to submit.

Appellant contends that § 1631.6(d) (5), supra, required that his induction be scheduled for a date prior to April 1, 1971 or that on that date he be transferred to a lower priority selection group.

This court has construed the meaning of the exception in § 1631.6(d)(5) supra permitting an order "to report for induction as soon as practicable" in two recent cases—United States v. Lewis, (unpublished), No. 72–1927 (9th Cir.) decided September 8, 1972, and United States v. Bowen, 467 F.2d 470 (9th Cir.) decided September 29, 1972.

In Lewis we affirmed the district court, incorporating by reference its opinion filed January 21, 1972, 5 SSLR 3134(D.Or.Cr. 71–276). Factually Lewis is similar to this case. In August the local board sent Lewis a SSS Form 150, which he did not return. On December 29, 1970, the board reviewed his II–S status and classified him I–A. On January 12, 1971 he was placed in the Extended Priority Selection Group. On March 2, without a request from Lewis, the board reopened his classification and retained him in I–A. On April 5 he was ordered to report for induction on April 27.

Assuming "that the circumstances covered by the exception were intended primarily to remedy delays initiated by the registrant," the court held that it did not follow "that a brief delay caused by board action renders an induction order void", and suggested that the judicial construction for which Lewis contended "would deny meaning to the words 'as soon as practicable' and would frustrate the intent behind the exception." The court continued in part:

"In the absence of evidence that the board acted arbitrarily, or reopened the defendant's file for the sole purpose of extending his vulnerability, I must assume that the board acted in good faith and reviewed the file because it had some legitimate reason to do so." United States v. Lewis, supra.

In Bowen we upheld an order to report for induction on April 26, 1971 where the registrant had appealed his I–A classification following denial of his conscientious objector claim, pointing out that "Bowen was not inducted prior to April 1 because his appeal caused the 'inability of the local board to act' in sufficient time" and that the board did "order Bowen to report 'as soon as practicable.'" We again recognized that a local board "has reasonable discretion to direct its operations in accord with its own procedures" and presumed "that the board acted regularly and in the usual course of its business." United States v. Bowen, supra, 467 F.2d at 472. In

2. A "Notice to Registrant", transmitting Form 150, reads in part:
"* * * The specified thirty-day period is normally sufficient for the completion and filing of this form, together with any supporting letters or affidavits from your minister or priest, teachers or counselors, family or friends, which you may wish to offer to the members of your local board.
"Although you should make a timely filing, your claim to conscientious objection is a matter that will be taken up by your board at a later date. * *"

*Bowen* we also reviewed cases in other circuits interpreting the regulation and upholding post April 1 inductions.[3]

Adkins, as did Bowen, relies heavily on United States v. Born, 338 F.Supp. 444 (W.D.Mich.1972), the only case to hold that an induction after April 1 was beyond the jurisdiction of the board. As we pointed out in *Bowen*, *Born* is distinguishable: "There, a delay of almost three months was found to have been due solely to board mismanagement." United States v. Bowen, *supra*, 467 F.2d at 472.

Adkins' Selective Service File does not show when the board met in March, 1971.[4] The Government stated in its brief that the board met on March 15. This was 31 days from the date Form 150 was mailed. Particularly in view of the statements in the Form and accompanying notice, the board could reasonably wait at least 30 days to give Adkins an opportunity to complete and return the Form. Allowing time for receipt of communications by mail, we can not say that the board acted unreasonably in deferring action until its April meeting.

While the board was not required to reopen Adkins' case at its April 19 meeting, there is no evidence that it abused its discretion in doing so. It could not then order induction for another 30 days. On May 24 Adkins was ordered to report on June 7.

While the delay here was longer than in Lewis and Bowen, we again recognize the "necessary administrative flexibility" available to local boards in their efforts to comply with § 1631.6(d)(5).[5] As in Bowen, we "presume that the board acted regularly and in the usual course of its business." [6] In the absence of any showing of bad faith or mismanagement by the board, or of any prejudice to the registrant,[7] we conclude that Adkins' local board proceeded with reasonable dispatch to comply with the regulations and that Adkins "was inducted as soon as practicable."

Affirmed.

DUNIWAY, Circuit Judge:

I dissent. Had Adkins' board ordered him to report for induction at its April 19 meeting, I would be inclined to agree with the result reached by the majority. However, it did not do so. I would hold that in this case the board failed to comply with the mandate of 32 C.F.R. § 1631.6(d)(5) to issue an induction order "as soon as practicable" after April 1.

Although the majority is correct in stating that Adkins' file, the only evidence introduced at his trial, is silent regarding a March meeting of his board, the Government has conceded on this appeal that the board met on March 15, one full day after the time within which Adkins was to complete the Form 150

---

3. Smith v. Tarr, 444 F.2d 251 (2 Cir. 1971) ; Lawton v. Tarr, 446 F.2d 787 (4 Cir. 1971) cert. denied, 405 U.S. 924, 92 S.Ct. 969, 30 L.Ed.2d 796 (1972) ; Schemanski v. Tarr, 331 F.Supp. 65 (N.D.Ill.1971).

4. There is no entry in the board's "Minutes of Action" between February 16, 1971 and April 19, 1971. Nor was any evidence offered at the trial with respect to a March meeting of the board.

5. United States v. Born, *supra* 338 F. Supp. at 447 ; United States v. Lewis, *supra*.

6. While we do not approve of unnecessary delays by draft boards, particularly in the light of the aim and purpose of §

1631.6(d)(5), we cannot say that this board's inaction exceeded the scope of flexibility granted. Clearly it did not amount to "irregular, unjustifiable and lawless conduct." United States v. Born, *supra* 338 F.Supp. at 447.

7. Appellant does not argue that he was prejudiced, but rather that the board failed to comply with Selective Service Regulations. Had the board acted in March, Adkins would have been called for induction at an earlier date. The board's failure to act in March and the reclassification of Adkins in April simply lengthened the time during which he could assert a claim for conscientious objector status.

had expired.[1] However, no action was taken at that meeting, despite the fact that the board could have issued an induction order to Adkins. Rather, it waited until April 19, reopened his classification *sua sponte*, and retained him in I–A.

No explanation has been offered for this action. The only possible authority for the April 19 reopening is 32 C.F.R. § 1652.2, which provides that a local board "may" reopen on its own motion "if such action is based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification. . . ." The only additional "fact" in Adkins' file was that over two months before, he had requested a Form 150, which he never returned. By no stretch of the imagination could this request satisfy the requirements of § 1652.2. Thus, under the regulation, Adkins' board had no authority to reopen his classification on April 19. This being so, there can be no presumption that it acted properly. It follows that there need be no showing such as the majority would require, that there was "bad faith or mismanagement by the board."

In the usual case, there will be no claim that a reopening was erroneous, because the resulting delay in induction works to the advantage of the registrant. Here, however, the shoe is on the other foot. The prejudice to Adkins is obvious: his exposure as a member of the Extended Priority Selection Group (EPSG) has been extended to half a year. The EPSG regulations create an extraordinary liability to induction which can only have an unsettling effect upon the life of the registrant.[2] While the regulations were not intended to place local boards in a straitjacket, an open-ended period of vulnerability is precisely the evil which they were designed to prevent.

Moreover, to require a showing of bad faith or mismanagement on the part of the board would, as a practical matter, eliminate the "as soon as practicable" requirement altogether. This case is a perfect example of how the majority's interpretation would permit a local board to play fast and loose with its regulations, issuing an induction order whenever it got around to it. I would hold that "as soon as practicable," while not an inflexible requirement, obliges the board to act properly and expeditiously after April 1.

Despite the fact that United States v. Lewis, 9 Cir., 1972, incorporating by reference D.Or., 1972, *supra*, involved a *sua sponte* reopening of the registrant's classification with a consequent delay in induction, it is not in point here. In that case it does not appear that the board's power to reopen on its own motion was challenged. More importantly there the board's action took place on March 1, well before the obligation to proceed "as soon as practicable" accrued. An induction order was issued promptly upon the expiration of the appeal period. *Lewis* is thus easily distinguished on its facts.

No court has interpreted the "as soon as practicable" requirement in circumstances even remotely similar to those of this case. With one exception, which, although it resulted in reversal of the registrant's conviction, is distinguishable,[3] prior cases have involved the validity of induction orders issued either in March or early April, with induction

---

1. "As a matter of public record, the board met on Monday, March 15." (Brief of appellee, p. 4.)

2. In this regard I find it significant that one of the President's goals in instituting the lottery system was to place precise limits upon a registrant's period of prime draft vulnerability so as to reduce the uncertainty that accompanies it. *See* S. Rep. 91–531, 91st Cong. 1st Sess., quoted in 1969 U.S.Code Cong. & Admin.News, pp. 1318, 1321. The EPSG regulations were promulgated in connection with the lottery system. Exec.Order No. 11,563, 3 C.F.R. 972, 974–975 (1966–70 Comp.).

3. The exception is United States v. Born, W.D.Mich., 1972, 338 F.Supp. 444. I do not mean to suggest that the conduct of Adkins' board approached the level of mismanagement present in that case. The majority and I part company with respect to whether such misconduct is necessary.

scheduled for April.[4] Thus, the sole issue of consequence in those cases was whether April 1 is an absolute cutoff date for induction of members of the EPSG. Recognizing that there is often considerable jockeying by registrants immediately prior to induction, and that it is unreasonable to impose inflexible deadlines upon local boards, the cases have uniformly rejected such arguments. I agree with the results of those cases, but they are not relevant here.

In sum, Adkins' board would receive all of the judicial deference and room for administrative flexibility to which it is entitled if we were to hold that it was not required to issue an induction order on March 15. The further delay occasioned by its improper action on April 19 was unjustified. I would reverse Adkins' conviction.

4. United States v. Bowen, 9 Cir., 1972, 467 F.2d 470 (March 15 induction order, induction scheduled for April 26) ; United States v. Lewis, *supra* (April 5 and April 27) ; Lawton v. Tarr, 4 Cir., 1971, 446 F.2d 787 (April 5 and April 21) ; Smith v. Tarr, 2 Cir., 1971, 444 F.2d 251 (March 24 and April 15) ; Schemanski v. Tarr, N.D.Ill., 1971, 331 F.Supp. 65 (April 5 and April 16). In Levine v. Selective Service Local Bd. No. 18, 2 Cir., 1972, 458 F.2d 1281, there was a dispute as to whether the board had opened the registrant's classification on March 1 following an interview held on February 23 to discuss his claim for an occupational deferment. An induction order had been issued on April 26, requiring him to report on May 13. While reversing a district court order dismissing the complaint so that the factual issue could be determined, the court observed that, if the board did reopen on March 1, "it would appear that the issuance was 'as soon as practicable'." *Id.* at 1285. Not only was this dictum, but it was clear that the board would have been justified in reopening before April 1, and there was nothing to indicate that it did not issue the order at its first meeting thereafter.